UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DORIS J. MASTERS, individually and on
behalf of a class of similarly situated
individuals,

        Plaintiff,

    v.

LOWE'S HOME CENTERS, INC.,

        Defendant.

Case No. 09-cv-255-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Lowe's Home Centers, Inc.'s Motion to Stay and Compel Arbitration (Doc. 11). Plaintiff has responded and Defendant has replied. For the following reasons, the Court DENIES the Motion.

## BACKGROUND

According to the allegations in the complaint, on October 15, 2007, Defendant Lowe's Home Centers, Inc. (Lowes) gave Plaintiff Doris J. Masters (Masters) a receipt which displayed more than the last five digits of Masters's credit card number. Masters alleges that Lowes thus violated the Fair and Accurate Transactions Act (FACTA), an amendment to the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681c(g). The truncation requirement of FACTA provides:

> No person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number . . . upon any receipt provided to the cardholder at the point of sale or transaction.

15 U.S.C. § 1681c(g)**.**

Masters attached a copy of the "receipt" in question to her complaint. Lowes points out, and Masters does not dispute, that what Masters characterizes as a "receipt" is actually the written memorialization of an in-person payment that Masters made on her Lowes branded credit

card at the Lowes store in Glen Carbon, Illinois.[1] Lowes contends that by making this in-person payment at a Lowes store, Masters was exercising one of her rights under the Lowes credit card account agreement (Agreement) that she entered into with GE Money Bank. The Agreement contains an arbitration clause which, if applicable to the instant dispute, compels Masters to submit the dispute to arbitration and forbids her from bring the dispute on behalf of a class. The Agreement also contains a choice of law provision specifying that the Agreement is governed by Utah state law and the Federal Arbitration Act.

The Arbitration Clause[2] of the Agreement reads:

**ARBITRATION PROVISION.** Please read this arbitration provision carefully. **IT PROVIDES THAT ANY PAST, PRESENT OR FUTURE LEGAL DISPUTE OR CLAIM OF ANY KIND, INCLUDING STATUTORY AND COMMON LAW CLAIMS AND CLAIMS FOR EQUITABLE RELIEF, THAT RELATE IN ANY WAY TO YOUR ACCOUNT OR YOUR RELATIONSHIP WITH US ("CLAIM") WILL BE RESOLVED BY BINDING ARBITRATION IF EITHER YOU, WE OR LOWE'S ELECTS TO ARBITRATE.**

It goes on to state:

As used in this provision,: "We," "Us." and "Our" means (1) GE Money Bank and all of its respective parents, subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors (collectively, the "Bank"), and (2) Lowe's Companies, Inc. and all of its respective parents, subsidiaries, affiliates, predecessors, successors, assigns, employees, officers and directors (collectively,"Lowe's"), if Lowe's is named as a co-party with the Bank in a Claim asserted by you.

Lowes has elected to arbitrate, and argues that the above clause compels Masters to

---

[1] Whether or not this writing is a "receipt" within the meaning of the statute is a question for another day.

[2] For purposes of this motion, the Court's analysis focuses on the arbitration provision in the September 2007 amendment to the account agreement. The original account agreement and earlier amended agreements contained a substantially similar arbitration provision.

2

submit this dispute to arbitration. Masters counters that, because only she and GE Money Bank were signatories to the agreement, Lowes's right to invoke the arbitration provision of the credit card agreement only arises when Lowes is named as a co-party with GE Money Bank. Because GE Money Bank is not a party to this action, Masters insists that Lowes cannot compel her to arbitrate her claim. Lowes counters that, because Masters claim relates to Lowes's obligations to her under the Agreement, she is equitably estopped from refusing to arbitrate her claims against Lowes.

## ANALYSIS

Defendants request a stay of this action in accordance with Section 3 of the Federal Arbitration Act (FAA), which reads, "if a suit is brought on the merits of a dispute covered by an arbitration agreement, the court in which such suit is pending, upon being satisfied that the issue involved in such suit of proceeding is referable to arbitration under such an agreement shall . . . stay the trial of the action until such arbitration has been had. . . ." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 23 n.27 (1983) (*quoting* 9 U.S.C. § 3).

When it passed the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, Congress intended to place agreements to arbitrate on an equal footing with other contracts. *Allied-Bruce Terminex Cos., Inc. v. Dobson*, 513 U.S. 265, 270-71 (1995). In pertinent part, FAA reads:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . .or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 1

Although the FAA's provisions "manifest a liberal federal policy favoring arbitration agreements," parties cannot be compelled to arbitrate disputes over issues or with parties not

covered by the language of the contract. *E.E.O.C. v. Waffle House, Inc.,* 534 U.S. 279, 289 (2002). The central issue for the Court, then, is to determine whether the language of the Agreement covers a dispute between Masters and Lowes over how payments made by Masters on her account must be treated by Lowes. Because the Agreement itself undoubtedly provides that the substantive laws of the state of Utah apply to the extent state law is relevant, the Court applies Utah law to determine whether Lowes is entitled to invoke the provisions of the Agreement, either as a party to the Agreement, as a third-party beneficiary of the Agreement, or because Masters is equitably estopped from refusing to arbitrate the dispute. *See, Certain Underwriters at Lloyd's London v. Argonaut Ins. Co.,* 500 F.3d 571, 577 (7th Cir.2007).

A.  **Lowes is not a Party to the Agreement**

The most natural reading of the contract as a whole is that, if Lowes is named as a co-party with GE Money Bank in a claim related to the credit agreement either Lowes, GE Money Bank, or both of them may compel the card holder to arbitrate her claim. However, this language alone does not support a theory that Lowes is a party to the credit agreement. Most arbitration agreements, like most contracts, bind only those who bargain for them, and "the burden of proof for showing the parties' mutual assent as to all material terms and conditions is on the party claiming that there is a contract" *Bybee v. Abdullah*, 189 P.3d 40, 49 (Utah 2008) (quoting *Cal Wadsworth Const. v. City of St. George*, 898 P.2d 1372, 1376 (Utah 1995)). In addition to mutual assent, the formation of a contract also requires consideration, that is, a bargained-for performance or promise. *Aquagen Int'l v. Calrae Trust*, 972 P.2d 411 (Utah 1998). Here, Lowes contends that Masters provided her information to Lowes and in exchange, Lowes promised to honor Master's Lowes credit card at its stores and to accept payments on Master's Lowes credit card at its stores. However, Lowes has pointed to no provisions in the

4

Agreement that obligate Lowes to either honor Masters's credit card or accept payment on it. Such obligations may exist, perhaps as part of a separate agreement between Lowes and GE Money Bank, but the obligations do not appear as terms of the Agreement before the Court. As Lowe's has provided no consideration to support the formation of a contract between itself and Masters, the Court finds that Lowes is not a party to the Agreement. However, Lowes may still have the right to compel Masters to comply with the arbitration provision of the Agreement if Lowes is a third-party beneficiary of the Agreement or if Masters is equitably estopped from repudiating the Agreement's arbitration clause.

### B. Third-Party Beneficiary Status Linked to Doctrine of Estoppel

Utah defines third-party beneficiaries to a contract as "those recognized as having enforceable rights created for them by a contract to which they are not parties and for which they give no consideration." *Bybee*, 189 P.3d at 49 (Utah 2008) (quoting *Rio Algom Corp. v. Jimco, Ltd.*, 618 P.2d 497, 506 (Utah 1980)). "A third party may claim a contract benefit only if the parties to the contract clearly express an intention to confer a separate and distinct benefit on the third party." *Id.* (internal citations omitted). The Utah Supreme Court has examined the question of when the right to demand arbitration is a "separate and distinct benefit" such that it would support third-party beneficiary status. *Bybee*, 189 P.3d 40. In *Bybee*, the plaintiff brought a wrongful death action against her late husband's doctor. *Id.* at 41. The doctor and his patient had entered into an agreement to arbitrate any claims arising out of the medical care provided by the doctor to the patient. *Id.* at 42. The agreement purported to bind the patient's "spouse or heirs" as well. *Id.* The defendant doctor moved to compel arbitration of the wife's claims, asserting that she was an intended third-party beneficiary of the arbitration agreement. *Id.*

The Utah Supreme Court stated, "While the intention to bind Mrs. Bybee is clear, it is

5

less apparent that the obligation to arbitrate was a "separate and distinct benefit" bestowed by her husband and Dr. Abdulla on her." *Id*. at 49. The court went on to note that Mrs. Bybee was only an incidental beneficiary to the overall physician-patient contractual relationship. *Id*. at 50. The court determined that third-party beneficiary status based on an arbitration provision is a corollary to the doctrine of equitable estoppel of such provisions. Courts may prohibit a person attempting to benefit from certain provisions of a contract from simultaneously repudiating that contract's arbitration provisions. *See, id.* at 50. As Mrs. Bybee had not invoked a claim to any contractual rights, the estoppel doctrine was inapplicable to her. *Id*. It followed that Mrs. Bybee could not be bound to the arbitration provision as a third-party beneficiary. *Id*.

Likewise, here, Lowes's ability to invoke the right to arbitrate this dispute as a third-party beneficiary to the contract is the flip side of Masters's obligation to arbitrate this dispute under the doctrine of equitable estoppel. *Id*. Accordingly, the Court must examine whether Masters is equitably estopped from refusing to arbitrate this dispute.

**C.     Masters is not Estopped from Arbitrating the Dispute**

When a plaintiff relies on the terms of an agreement in its claims against the defendant, she will be equitably estopped from repudiating the arbitration clause of the agreement upon which she relies. *Hughes Masonry Co., Inc. v. Greater Clark County School Bldg. Corp.*, 659 F.2d 836, 841 (7th Cir.1981); *MS Deal Service Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir.1999) ("Equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory."); *see, also Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527-28 (5th Cir.2000).

Here, Lowes contends that Masters's claims relies on the term of the Agreement that

states that GE Money Bank will deem payments made at a Lowes retail store immediately received for purposes of crediting Master's account. Masters counters that she does not seek to hold Lowes liable for violation of or interference with any term or provision of the credit agreement. Her claim is simply that Lowes violated federal law by failing to truncate her credit card number on a receipt. The Court agrees that Masters's claim does not rely on any terms or provisions of the credit card agreement with GE Money Bank. Although Masters was arguably exercising one of her rights under the Agreement in making her credit card payment at a Lowes store, her claim against Lowes does not refer to nor depend on her contractual rights. In a very real sense, any consumer who pays a merchant by credit card is exercising one of her rights under that credit agreement. Surely, the doctrine of equitable estoppel does not mean the merchant can shelter under the arbitration provisions of those agreements. There is no inequity unless the plaintiff refuses to abide by the arbitration provisions of a contract while simultaneously insisting that the non-signatory defendant abide by the terms of the contract. That is not the case here. The statutory duty that Masters claims Lowes violated is independent of her rights under the Agreement. Accordingly, the Court finds that Plaintiff is not equitably estopped from refusing to arbitrate this claim. As a corollary, Lowes is not entitled to invoke the arbitration provision of the credit agreement between Plaintiff and GE Money Bank.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the Motion to Stay Proceedings and Compel Individual Arbitration (Doc. 11).

**IT IS SO ORDERED.**
**DATED: June 11, 2009**

                                        s/ J. Phil Gilbert
                                        **J. PHIL GILBERT**
                                        **DISTRICT JUDGE**