```
 1                UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF ILLINOIS
 2
   DORIS MASTERS, individually    )  Docket No. 09-CV-255
 3 and on behalf of the class of  )
   similarly situated individuals,)
 4                                )
             Plaintiff,           )  Benton, Illinois
 5                                )  July 14, 2011
   vs.                            )
 6                                )
   LOWE'S HOME CENTERS, INC.,     )
 7 doing business as Lowe's,      )
                                  )
 8           Defendant.            )

 9

10                     FAIRNESS HEARING
           BEFORE THE HONORABLE J. PHIL GILBERT
11             UNITED STATES DISTRICT COURT JUDGE

12
   APPEARANCES:
13
   For the Plaintiff:   Mr. Richard J. Doherty
14                      Mr. Phillip A. Bock
                        Bock & Hatch, LLC
15                      134 N. LaSalle Street, Suite 1000
                        Chicago, Illinois 60602
16                      312-658-5500

17                      Mr. Mark Brown
                        LakinChapman, LLC
18                      300 Evans Avenue
                        Wood River, Illinois 62095
19                      618-208-4240

20 For the Defendant:   Mr. Kimball Anderson
                        Ms. Kathleen Barry
21                      Winston & Strawn LLP
                        35 W. Wacker Drive
22                      Chicago, Illinois 60601

23                      Mr. Troy Bozarth
                        Hepler Broom LLC
24                      103 W. Vandalia Street, Suite 300
                        Edwardsville, Illinois 62025
25
                        Mr. John Broz
```

```
 1  Court Reporter:      Jane McCorkle
                         16429 N. Hawthorne Dr.
 2                       Mt. Vernon, Illinois 62864
                         618-244-4426
 3                       janemccorkle@charter.net

 4

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              THE CLERK:  Doris Masters versus Lowe's Home
 2  Centers, Incorporated, case number 09-255.  This matter is
 3  set for a fairness hearing.  Are all the parties ready?
 4  Would you please stand and acknowledge your name for the
 5  record.
 6              MR. DOHERTY:  Good afternoon, Your honor.  Richard
 7  Doherty on behalf of the plaintiffs.
 8              THE COURT:  Good afternoon.  Who else is there?
 9              MR. BROWN:  Your Honor, I'm Mark Brown from
10  LakinChapman, also here on behalf of the plaintiffs.
11              THE COURT:  Mark Brown?
12              MR. BROWN:  Yes, sir.
13              MR. ANDERSON:  Good afternoon, Your Honor.  I'm
14  Kimball Anderson on behalf of Lowe's Home Centers, Inc.
15              MR. BOZARTH:  Troy Bozarth, Your Honor, on behalf
16  of Lowe's.
17              MR. BROZ:  And John Broz from Lowe's.
18              THE COURT:  Pardon?
19              MR. BROZ:  From Lowe's.
20              THE COURT:  You're from Lowe's?  That's a strange
21  name.  From Lowe's?  Do you have a name?
22              MR. BROZ:  John Broz from Lowe's.
23              THE COURT:  John Broz from Lowe's.
24              MR. BROZ:  That's right.
25              THE COURT:  Okay.  All right.  We are here today on
```

1  the plaintiffs' motion for final approval of class
2  certification and for the motion for attorneys' fees,
3  expenses, and incentive award.
4          The Court's reviewed the file.  The Court needs to,
5  for the record, needs to be satisfied that, first of all,
6  whether the Court should affirm its conditional certification
7  of the class and whether Masters and her counsel have
8  adequately represented the class, whether the settlement
9  agreement on the terms and conditions provided are fair,
10 reasonable, and adequate, and whether the lawsuit should be
11 dismissed on the merits, with prejudice, as to Lowe's, and
12 whether the Court should permanently enjoin the assertion of
13 any claims that arise or relate to the subject matter of this
14 lawsuit against Lowe's or its affiliate, the GE Money Bank
15 and other release parties, whether the application for
16 attorney fees and expenses to be submitted by class counsel
17 should be approved, whether the application for incentive
18 award should be approved.
19         The Court has reviewed the objections that have
20 been filed.  I don't think there's any objectors here.  Do
21 you anticipate any objectors here?
22         MR. DOHERTY:  No, Your Honor, I've spoken with
23 objector Canetta (phonetic) who's indicated he will not be
24 here.
25         THE COURT:  Is he a professional objector?

1       MR. DOHERTY?  He is, in our opinion.

2       THE COURT:  Mr. Doherty, are you ready to proceed?

3       MR. DOHERTY:  I am, Your Honor.

4       THE COURT:  Okay.  Let's get the show on the road.

5       MR. DOHERTY:  I'm very proud --

6       THE COURT:  Why don't you turn your mic on and move
7  this thing up since you're tall.

8       MR. DOHERTY:  I'm very, very pleased and very proud
9  to present the motion for final approval today with respect
10 to the settlement.

11      We've had an outstanding experience dealing with
12 Lowe's, with the class, with Lowe's counsel.  The notice
13 program has been outstanding.  It's been a direct mail notice
14 program that was carried out by a third-party settlement
15 administrator, Analytics, Incorporated.  Everything went out
16 on schedule, and they fielded innumerable inquiries from
17 class members, as we have, at my office.  And the response of
18 the class to the notice program and to the settlement has
19 been absolutely outstanding.

20      We've had -- minimal is probably overstating the
21 opposition that we have experienced to the settlement.
22 Ninety-nine percent plus --

23      THE COURT:  How was this settlement negotiated?  I
24 know it was negotiated.  This was done through the Seventh
25 Circuit process?

1       MR. DOHERTY:  Painstakingly would probably be the
2  best I could describe how the settlement was negotiated.  We
3  started in the Seventh Circuit mediation offices.  There was
4  a referral to the Seventh Circuit mediation offices after
5  Lowe's filed an appeal from the Court's order with respect to
6  the arbitration issue.
7       Rocco Spagna is a mediator at the Seventh Circuit
8  mediation offices who both Mr. Anderson and I have had
9  experience with in the past.  He's very astute; he's very
10 experienced, and he's very persuasive and hard working.  We
11 had a number of dealings through the Seventh Circuit
12 mediation offices.
13      We made a good deal of progress there and,
14 primarily, owing to scheduling issues, we made one last push
15 with Benjamin Davis, who is a private mediator, and we did
16 that down in Charlotte.  Benjamin Davis was able to push us
17 to the point where we reached a memorandum of understanding
18 on class relief.  And then after that was accomplished, we
19 proceeded to negotiate incentive awards and attorneys' fees
20 with him relatively late one night is how far that got
21 pushed.
22      Even after that point when we got to, actually, the
23 nuts and bolts of the settlement agreement itself, it was
24 many, many months of negotiation on the finalization of all
25 of those terms before we were finally able to file the motion

1  for preliminary approval and obtain the Court's permission.

2              THE COURT:  In a nutshell, for the record, put in
3  what the settlement is.

4              MR. DOHERTY:  Well, the settlement provides for a
5  fund for claims to be made by class members who are really
6  Lowe's best customers.  These are people who have a GE Money
7  Bank Lowe's branded credit card.  These are people who pay
8  their GE Money Bank Lowe's credit card bill at the store, at
9  the Lowe's store.  FACTA requires that, a truncation
10 requirement of FACTA means only so much information can
11 appear on a credit card -- I'm sorry -- on a receipt.

12             More information that is allowed by FACTA --

13             THE COURT:  By law.

14             MR. DOHERTY:  -- appeared on the receipt.  So the
15 class members are people who had that experience at Lowe's.
16 Because of GE Money Bank's recordkeeping, which we also
17 investigated in the process of confirmatory discovery, we
18 were able to identify these people because they regularly
19 have bills mailed out to them, so we were able to effectuate
20 a very good notice plan of getting direct mail notice to
21 them.

22             People who are participating in the settlement can
23 get either a 25, 33 or $40 Lowe's gift card, which is good as
24 cash.  It has no fees associated with it.  It has absolutely
25 no expiration date, and it is fully transferrable.  And it's

ideally suited to these people because these are their best customers. These are people who go into Lowe's anyway by definition as class members so they've got $40 to spend on anything they want. There are no restrictions in that regard.

The vast majority so far of the well over 4 million, actually more than 4.1 million in claims -- I bet you from the time I woke up till now thousands and thousands of dollars of more claims have been made. The vast majority of them are for the $40 gift card.

So the class can get a $40 gift card. I think it's an outstanding result. It surpasses any other FACTA settlement that we know.

THE COURT: Will it end up being more than 7 million?

MR. DOHERTY: I don't know. Claims are still rolling in. There's, until September 1st, for claims to be made. As the Court is aware, what we did when we negotiated the deal, we established a floor or a threshold amount.

THE COURT: And you're beyond that.

MR. DOHERTY: We are well beyond that. That was the threshold amount of 3.5 million dollars. Even then we tried to build in -- we did build in a *cy pres* mechanism where if that floor was not hit, that the money between the claims that had been made and the 3.5 million was going to go

1  to Habitat for Humanity as a *cy pres* beneficiary, but we're
2  well past that.
3          THE COURT: I know you're past that. If there's
4  not the 7 million, where's the money going to go if that 7
5  million cap isn't reached?
6          MR. DOHERTY: There's a reversion to Lowe's of that
7  amount between the claims that will be made by the class and
8  the $7,000,000.
9          THE COURT: So it goes back to Lowe's?
10         MR. DOHERTY: Yes. Lowe's has, in addition, paid
11 nearly 1.2 million dollars to the class administrator,
12 Analytic, for the purpose of notice and administration of the
13 settlement, which, also, as the case law holds, is a benefit
14 to the class.
15         THE COURT: Okay. Go ahead.
16         MR. DOHERTY: Again, the response has been
17 outstanding. We've got hardly any objections. And by
18 contrast we've got this overwhelming number of over
19 $4,000,000 in claims.
20         With respect to the objections, there are four of
21 them. Three of them are in the nature of "I wasn't actually
22 harmed." And that, I would submit, is irrelevant. The fact
23 that it provides for statutory damages, there is no actual
24 damage requirement under FACTA.
25         THE COURT: The Court agrees.

1                MR. DOHERTY:  Mr. Canetta's objection is that this
 2   is a coupon settlement.  It is not.  A coupon requires you
 3   have to spend money to participate, receive the benefits of a
 4   settlement in exchange for release of claim.  There's no
 5   money that needs to be spent.  This is, for most people, a
 6   $40 gift card.
 7                Mr. Canetta claims that the *cy pres* beneficiary has
 8   not been named in the settlement.  It was explicitly named,
 9   Habitat for Humanity.  And in any event, the *cy pres*
10   provision is moot because we passed that.
11                Mr. Canetta claims that the attorneys' fees are too
12   high, and for the reasons that we submitted in our petition
13   for attorneys' fees, by any measure, the attorneys' fees are
14   eminently reasonable either as a percentage of the fund or
15   over because they were separately negotiated.  They don't
16   diminish the class relief and are reasonable under all the
17   case law.
18                At the end of the day, and I've had extensive
19   discussions with Mr. Canetta yesterday and today.  I really
20   tried to persuade him to withdraw the objection.  You know,
21   the kind of consideration that he's seeking isn't there for
22   him to withdraw the objection.  He's, basically, conceded
23   that the claims rate is high.  He's conceded that the notice
24   plan is beyond reproach.  In conversations he really hasn't
25   pushed any of the ideas that he pushed in the objection.

1                THE COURT:  Well, of course, he had an opportunity
2    to be here.
3                MR. DOHERTY:  And he could have been here.  He
4    could have intervened in the case.  When you look at the
5    docket out there, just the federal docket, and you see the
6    number of cases that he's objected to, and when you look at
7    the objection he submitted here and what we tried to do is
8    show the Court how he just blocks and copies things from
9    other objections and re-files them without regard to whether
10   they are particularly relevant to the case that he's
11   objecting to.
12               And he's been referred to by, not just me, as a
13   professional or serial objector.  Judges have referred to him
14   in that fashion.  He will then proceed to file an appeal, but
15   he won't file an appellate brief.  Whether that's going to
16   occur here, I have no idea.  But for the reasons stated in
17   our brief, I think his objections should be overruled.
18               THE COURT:  The Court is going to overrule the
19   objections.
20               MR. DOHERTY:  After that, Your Honor, the only
21   thing left is our petition for incentive award to Doris
22   Masters and for attorneys' fees.  I think the incentive award
23   is well within the --
24               THE COURT:  The $2,500?
25               MR. DOHERTY:  Yes.  Well within the realm of

1  reasonableness based on incentives awards that are out.  And
 2  with respect to the attorneys' fees, for the reasons stated
 3  in our petition:  They were separately negotiated.  They
 4  don't diminish the class relief.  There's no question but
 5  that there's not collusion of any type here.  When you look
 6  at the 9.9 million dollars that comprises the benefits of the
 7  class, the fees and costs combined only add up to 17 percent
 8  of the benefit made available to the class.
 9              Even if you were to look at it in a way that isn't
10  supported by the case law that's raised by Mr. Canetta which
11  is that we should just look at what the class has claimed,
12  even though we've got till September 1st, you can take what
13  they've claimed so far and add in the cost of notice,
14  administration, the fees, and you're at something -- by now I
15  think we are at 24 percent.
16              THE COURT:  Which is still within the range.
17              MR. DOHERTY:  Well within the range of reasonable,
18  well within the range of reasonable.  So we would request,
19  also, that the fees and costs be granted.
20              THE COURT:  Okay.  Mr. Anderson.
21              MR. ANDERSON:  Thank you, Your Honor.  I'll be
22  brief.  Lowe's joins in the plaintiffs' motion for approval.
23  And your questions at the outset of your remarks with
24  Mr. Doherty about how the settlement was negotiated, I think,
25  go right to the heart of one of the principles of the

gatekeeping functions of the district court, which is to determine whether or not there was any collusion going on here. Obviously, you would not want to be approving any collusive settlement. And I want to assure you, as Mr. Doherty has, that there was no collusion here.

We started off the case as a very hard fought litigation. Lowe's raised substantial defenses. If you will recall, we started out moving to compel arbitration, and that issue absolutely ended up in the Seventh Circuit where it's being held in abeyance right now pending this settlement.

We also defended on the grounds that this particular portion of the act did not even apply to these transactions. We argued and remain of the view that this particular portion of the act applies to when you are buying with a credit card goods and services, you get a receipt for that, and we were fully truncating on that. We maintained vigorously that the act did not apply to the situation where you are simply making a payment on account.

We also argued the lack of willfulness. The plaintiffs here are not entitled, we are not entitled to recover unless they prove an intentional violation of the act by Lowe's. Mr. Doherty took discovery on that, both pre and post-settlement discovery, and I would have to say that was a highly contested fact. And then even if you assume liability and an intentional conduct, two issues that we fought very

vigorously on, that would be the issue of what statutory damages, if any, would be appropriate.

This was not a case where any of the plaintiffs, not the named plaintiff or anybody else, was claiming any actual damages and no one asserted that they had suffered any actual identity fraud. So in short there were a lot of vigorously contested issues. All of that led to the protracted negotiations that Mr. Doherty described and reminds me a lot like we are reading in the newspapers today about the Washington D.C. negotiations over raising the national debt.

Suffice it to say, we did not get anywhere for a long, long time. It was only after a lot of effort was put in by counsel, the parties, and various skilled negotiators that we got where we are today. So this was hardly collusive. It was hard fought. At the end of the day, I think a very good resolution for both Lowe's, its customers, and the class for the reasons that Mr. Doherty has outlined. And I also concur entirely that the Canetta objections are not well grounded, and I think they've been addressed adequately in the papers.

So I would join Mr. Doherty and request that the Court approve the settlement. And I would also note one final thing, that there has been some argument by Canetta about the fees. Lowe's, in the settlement agreement, agrees

1  to pay up to the 1.7 amount.  But I want to also just point
2  out, which the Court is probably already aware, that is a
3  separate issue from approval of the settlement.
4            THE COURT:  Correct.
5            MR. ANDERSON:  Whatever the fees turn out to be
6  does not affect the final approval of the settlement.  That
7  settlement ought to rise and fall on whether due process was
8  followed in terms of the notice and the overall fairness of
9  the result of the class and also an examination of the
10 collusive issue and, of course whether or not this was a hard
11 fought case.  And all of those issues, I think, compel
12 approving the settlement.
13           So I just wanted a footnote that the approval of
14 the settlement is really a totally separate issue from the
15 ultimate amount of the fee awarded to the plaintiffs' class.
16 But you know Lowe's position on that, we acquiesce to an
17 amount up to the 1.7 dollar figure.
18           THE COURT:  Okay.  Thank you.  The Court, having
19 reviewed all the documentation submitted, including the
20 proposed settlement, the Court's going to confirm its
21 conditional certification of the class and find that Masters
22 and her counsel have adequately represented the class.  Going
23 to further find that the settlement is fair, reasonable, and
24 adequate.
25           The Court finds that the four objections filed to

the settlement agreement are without merit, and they will be
overruled.

The Court's going to find that the attorneys' fees
and expenses submitted by class counsel are to be approved,
and that the incentive awards are to be approved.

So the Court has also reviewed the proposed order
of approval and is going to approve the same, and we can do
that today.

So anything else I need to do? What else do I need
to do?

Okay. The judgment, we still need a proposed
judgment. And, you know, in the Seventh Circuit the judgment
cannot reference other documents. So we've made some changes
in it. Kyle, do you want to explain it?

LAW CLERK: We reviewed the proposed order and
final judgment that the parties submitted, and I believe that
was supposed to be what it said it was, a proposed order and
judgment. That itself references the settlement agreement.

THE COURT: Which is okay.

LAW CLERK: The Seventh Circuit, as part of a
judgment, it cannot reference extrinsic documents.

THE COURT: Like the notices and things like that.

LAW CLERK: Right, which is what it currently does.
So my suggestion to Judge Gilbert was to remove any reference
to final judgment. In the proposed judgment that the parties

```
 1  submitted, I believe it's only referenced three times.  It's
 2  referenced in the title of the proposed document, and it's
 3  referenced, I think, on the last page two separate times.
 4            And then we could have a proposed order that grants
 5  the motions that are before the Court today, and then if the
 6  parties would submit a proposed judgment which can include
 7  the terms of the settlement agreement.  And if we couch that
 8  in terms of an injunction, basically, enjoining parties from
 9  further litigating these claims, that would be sufficient.
10            And I can spell this out a little bit more if the
11  parties would like after the hearing, but that was my
12  understanding of the proposed document.
13            THE COURT:  Do you follow, Mr. Doherty?
14            MR. DOHERTY:  I do.
15            LAW CLERK:  And I, also --
16            THE COURT:  Go ahead.
17            LAW CLERK:  Well, we talked about the fact that
18  this is currently being held in abeyance by the Seventh
19  Circuit, and I wasn't entirely sure --
20            THE COURT:  Where does it go from here?
21            LAW CLERK:  -- whether we need to enter the orders
22  today.
23            THE COURT:  Once I approve this --
24            MR. ANDERSON:  Once you approve that we will
25  jointly notify the Seventh Circuit, and the appeal will be
```

```
 1   dismissed.
 2              LAW CLERK:  And the orders can enter today.
 3              MR. ANDERSON:  Yes.  And a footnote on that ought
 4   to be, I think, we are going to have to wait and see whether
 5   anybody takes an appeal.  We will have to let the 30-day
 6   period run.
 7              Rich, do you remember when our next date for the
 8   status report is?  The Judge has us on a regular status
 9   report.
10              MR. DOHERTY:  And a pretty tight leash.
11              THE COURT:  When is your next status before --
12              MR. DOHERTY:  We submit a status report -- I
13   believe we have one due within about two weeks.
14              THE COURT:  If you're going to wait the 30 days
15   after I enter this, then you'll just have to notify them that
16   the order's been entered, and you are waiting for a possible
17   appeal period to run before going back to them.
18              MR. ANDERSON:  That's exactly what we will do.
19              THE COURT:  All right. Anything else?  Now what
20   about the judgment now?  Are they going to --
21              LAW CLERK:  It would be my suggestion that the
22   parties submit a proposed judgment which can incorporate the
23   terms of the settlement agreement and omits any reference to
24   other documents because the currently proposed order
25   references the settlement agreement itself, and the final
```

```
 1  judgment cannot do that.  It cannot incorporate the terms of
 2  the settlement agreement.  It can go out in there, but it
 3  cannot itself refer to extrinsic documents.
 4           MR. DOHERTY:  So if we'd have order of final
 5  approval without end final judgment and then remove the two
 6  references on the last page --
 7           LAW CLERK:  I can show you what I would recommend.
 8           MR. DOHERTY:  And then that could be entered today,
 9  and we could submit a proposed final judgment today.  That's
10  fine with the plaintiff.
11           THE COURT:  Is that okay, Mr. Anderson?
12           MR. ANDERSON:  That will be fine.
13           THE COURT:  Okay.  All right.  Anything else?
14           MR. DOHERTY:  No.
15           THE COURT:  That concludes this hearing.
16      (End of hearing.)
17
18
19
20
21
22
23
24
25
```

```
 1                   REPORTER'S CERTIFICATE
 2
 3          I, Jane McCorkle, Official Court Reporter for the
 4   United States District Court for the Southern District of
 5   Illinois, do hereby certify that the above and foregoing is a
 6   true and correct transcript of the proceedings of Fairness
 7   Hearing had in this cause as same appears from my stenotype
 8   notes made personally during the progress of said
 9   proceedings.
10
11
12   DATE:   9/24/11                s/s Jane McCorkle
13                                  JANE McCORKLE
14
15
16
17
18
19
20
21
22
23
24
25
```